1

2

3

4

5

6

7

8

9 UNITED STATES BANKRUPTCY COURT

10 FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| 11 IN RE | ) | |
| | ) | Bankruptcy Case |
| 12 VAN R. BOND, | ) | No. 15-60939-tmr7 |
| | ) | |
| 13 _____ Debtor. | ) | |
| | ) | |
| 14 CATHY CHAPMAN, | ) | Adversary Proceeding |
| | ) | No. 15-6038-tmr |
| 15 Plaintiff, | ) | |
| | ) | |
| 16 v. | ) | |
| | ) | |
| 17 VAN R. BOND, | ) | MEMORANDUM OPINION |
| | ) | |
| 18 _____ Defendant. | ) | |

19    Plaintiff has filed an adversary proceeding to except several money awards memorialized in a state

20 court judgment from discharge under 11 U.S.C. § 523.[1]  The present matter comes before the Court on

21 Plaintiff's motion for partial summary judgment.  The motion has been fully briefed and is ripe for decision.

22    **Facts**:

23    From the submissions there is no dispute as to the following facts, some of which were established in

24 prior litigation between the parties.

25

26

_____

[1]Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

MEMORANDUM OPINION-1

1   Plaintiff and her husband, Robert Chapman, were cattle ranchers in California for the duration of

2   their 15-year marriage.  Defendant was friends with Mr. Chapman.  In September 2009, Mr. Chapman died.

3   Upon his death, Plaintiff was left with substantial assets.  Shortly after Mr. Chapman's death, Defendant

4   approached Plaintiff and expressed a willingness to help around the ranch.

5   In early 2010, Defendant asked Plaintiff if he and his wife, Natalie Bond (**Natalie**), could move their

6   trailer onto the ranch, and, in exchange for free rent, continue to help with the ranch property.  Plaintiff

7   agreed, and Defendant and Natalie moved onto the ranch in March 2010.

8   Around October 2010, Defendant induced Plaintiff to enter into a loan transaction, whereby Plaintiff

9   provided all of the funds to purchase real property located at 498 Pine Grove Road, Rogue River, Oregon.

10  The purchase price was $450,000; however, Plaintiff loaned Defendant $473,065 in the transaction.  The

11  parties agreed that Defendant would repay Plaintiff $600,000, of which $300,000 was due in 18 months, with

12  the remaining $300,000 to accrue interest at 10% per annum, to be paid over 5 years.  Title was conveyed to

13  Plaintiff and Defendant's friend, Colleen Raynes, as tenants in common.

14  In late 2010 and early 2011, Plaintiff and Defendant agreed to enter into a business partnership called

15  "Side X Side."  They agreed Plaintiff would contribute her cattle to the partnership and Defendant would

16  contribute his equipment.

17  The parties, through the partnership, engaged in the business of raising and selling cattle from 2011

18  through September 2012.  During this time, Plaintiff contributed $272,640.59 in cash to the partnership.  The

19  funds in the partnership consisted primarily of cash contributed by Plaintiff or income from the sales of the

20  cattle that Plaintiff contributed or the offspring of such cattle.  Throughout the parties' business relationship,

21  Defendant used the partnership bank account, which essentially consisted of Plaintiff's personal funds or

22  funds generated from the sale of cattle that were originally Plaintiff's, as a convenient source of money for

23  personal use.

24  In May 2011, Defendant induced Plaintiff to provide $50,000 to Defendant for an investment in a

25  business venture called "Rim Shot Locs."  The parties agreed that one-half of that amount was a loan to

26  *// // //*

MEMORANDUM OPINION-2

Defendant so that he and Plaintiff would each own one-half of the investment.  Instead, Defendant obtained the investment in his name only.  Defendant did not repay any portion of the loan.

In September 2011, Defendant induced Plaintiff to loan him $100,000, the majority of which was used to purchase a green water truck, while $5,000 of which was used for the down payment on the purchase of a yellow water truck.  Defendant later sold the green water truck.  Plaintiff only received $41,000 in repayment of the loan.

From 2011 through 2012, Defendant induced Plaintiff to loan or deliver to him tens of thousands of dollars in various other transactions, including money for vehicles, equipment, and his step-daughter's tuition.

Defendant forged Plaintiff's name on a number of checks in order to transfer money to his own personal use.

In September 2012, the working relationship between the parties ceased to function.

On December 18, 2012, Defendant filed a complaint against Plaintiff in Jackson County Circuit Court (**the state court action**).   Plaintiff responded by filing numerous counter/cross claims against Defendant, Natalie, and Colleen Raynes.

On November 6, 2014, after six days of trial, the jury arrived at its verdict.  The jury found:

> 1) Defendant committed fraud against Plaintiff in connection with the loan for the acquisition of the Rogue River property, and the fraud damaged Plaintiff in the amount of $246,593.63;
>
> 2) Defendant and Natalie breached "any fiduciary duty of care, loyalty or honesty they owed to" Plaintiff, and as a result Plaintiff suffered damages in the amount of $371,775.09;
>
> 3) Both Defendant and Plaintiff liable on competing conversion claims, which netted out to an award of $61,092.56 in Plaintiff's favor;[2]
>
> 4) Defendant converted $9,212.03 in personal property belonging to Side X Side; and

---

[2]The jury awarded Plaintiff $50,000 for money Defendant converted and $14,165 for other personal property he converted.  It also awarded Defendant $3,072.44 for personal property Plaintiff converted, all for a net award of $61,092.56 in Plaintiff's favor.

MEMORANDUM OPINION-3

5) Defendant breached an agreement to repay Plaintiff on the loan secured by the Rogue River property, and that $465,187.26 was owed to Plaintiff for the loan.

On February 12, 2015, the trial judge issued a letter opinion resolving the equitable claims and issues, including the dissolution, windup, and accounting of the Side X Side partnership, as well as claims for a constructive trust, rescission, and/or foreclosure as to the Rogue River property. The letter opinion included many of the above factual recitations, as well as specific findings relating to a constructive trust and a partnership accounting.

Defendant filed his Chapter 7 petition on March 23, 2015. After motion, Plaintiff was granted limited relief from stay to complete the state court action.

On September 11, 2015, the jury's verdict and judge's findings were reduced to a General Judgment (**the Judgment**). The Judgment incorporated the judge's letter opinion and amendment thereto, as well as the jury's verdict. It provided amongst other things for three (3) money awards in Plaintiff's favor as follows:

1) for breach of fiduciary duty in the amount of $371,775.09 against Defendant and Natalie;

2) for conversion in the amount of $4,606.61 against Defendant. (This amount represented one half of the amount of Side X Side's personal property the jury found Defendant had converted);

3) for fraud in connection with the Rogue River property lending transaction in the amount of $246,593.63 against Defendant.

The Judgment also indicated Plaintiff had elected the remedy of constructive trust with regard to the Rogue River property, and awarded her all ownership and possessory rights therein. Alternatively, the court found in Plaintiff's favor on her rescission (on fraud grounds) and foreclosure claims regarding the loan secured by the property. The Judgment also preserved the "Limited Judgment" entered earlier in the case which was the net award of $61,092.56 in Plaintiff's favor on the competing conversion claims.

**Summary Judgment Standards**:

On a motion for summary judgment, the moving party has the burden to show "that there is no genuine dispute as to any material fact and . . . [he] is entitled to judgment as a matter of law." FRCP 56(a)

MEMORANDUM OPINION-4

1  (made applicable by FRBP 7056).  The substantive law governing a claim or defense determines whether a

2  fact is material.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

3  Material facts are such facts as might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477

4  U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  "A dispute about a material fact is genuine only 'if the

5  evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

6  FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at

7  248).

8        With regard to its own claims or defenses (i.e., those elements for which the moving party bears the

9  burden of proof at trial), the movant must support its motion with evidence that would entitle it to a directed

10  verdict if not controverted at trial.  C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc., 213 F.3d 474,

11  480 (9th Cir. 2000).  If the movant makes the requisite affirmative showing, the non-movant may not simply

12  rely on allegations and denials in its own pleadings.  FRCP 56(c).  Instead, the non-moving party must

13  produce significant probative evidence (or point to such evidence already before the court) showing specific

14  facts which demonstrate the existence of a genuine issue for trial.  Intel Corp. v. Hartford Accident & Indem.

15  Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (internal citation omitted).

16  **Discussion:**

17        The motion seeks summary judgment excepting from discharge the three (3) money awards in the

18  Judgment.[3]  The Court will discuss each award separately.

19  Conversion Money Award:

20        Defendant concedes the conversion money award of $4,606.01 is not dischargeable.  Defendant's

21  Response Memorandum (Doc. #18) at p.6.

22  Fraud Money Award:

23        The fraud money award for $246,593.63 is based on the jury verdict awarding damages suffered in

24  connection with the Rogue River property lending transaction.  Plaintiff relies on the issue-preclusive effect

25

26        [3]The motion does not address the judgment for $61,092.56 based on netted conversion claims, and
memorialized in the Limited Judgment.

MEMORANDUM OPINION-5

of the jury's finding and the Judgment to render the award excepted from discharge under § 523(a)(2)(A).[4]
This argument necessitates a brief review of the law of issue preclusion in dischargeability litigation.

Issue Preclusion:

Issue preclusion–sometimes referred to as collateral estoppel–is a viable tool in § 523 litigation. Grogan v. Garner, 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 658 (1991). In determining the preclusive effect of a state court judgment in a subsequent federal suit (including dischargeability proceedings), the court looks to the issue-preclusion law of the state that rendered the judgment. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). In Oregon, "[i]ssue preclusion . . . preclude[s] relitigation of an issue [of law] or fact when that issue or fact has been determined by a valid and final determination in a prior proceeding." McCall v. Dynic USA Corp., 138 Or. App. 1, 5, 906 P.2d 295, 297 (1995) (internal quotation omitted). The requirements are:

> 1) The issue in the two proceedings is identical.
>
> 2) The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
>
> 3) The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
>
> 4) The party sought to be precluded was a party or was in privity with a party to the prior proceeding.
>
> 5) The prior proceeding was the type of proceeding to which th[e] court will give preclusive effect.

Id. at 5, 906 P.2d at 297-298 (quoting Nelson v. Emerald People's Util. Dist., 318 Or. 99, 104, 862 P.2d 1293, 1296-1297 (1993)). "The party asserting issue preclusion bears the burden of proof on the first, second, and fourth requirements, whereupon the burden shifts to the party against whom preclusion is

// // //

---

[4]Section 523(a)(2)(A) excepts from discharge "any debt–(1) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

MEMORANDUM OPINION-6

asserted to show that the third and fifth requirements are not met."  Thomas v. U.S. Bank Nat'l Assoc., 244 Or. App. 457, 469, 260 P.3d 711, 719 (2011).

There is no dispute prongs ##3-5 above have been met.  Further, Defendant does not dispute the issues in the state court action (prong #1) were identical to those under § 523(a)(2)(A).  See Daniels v. Holman (In re Holman), 536 B.R. 458, 464 (Bankr. D. Or. 2015) (listing the elements of a § 523(a)(2)(A) claim);  Great Am. Ins. Co. v. Linderman, 2015 WL 4387943, *8 (D. Or. July 15, 2015) (listing the elements of an Oregon common law fraud claim).

Defendant only contests whether the issue of damages proximately resulting from the fraud, as required under § 523(a)(2)(A), Holman, 536 B.R. at 464, was actually litigated and essential to the fraud money award.  He points to the jury's additional finding that Plaintiff suffered $465,187.26 in damages based on Defendant's breach of the contract underlying the loan on the Rogue River property, and notes that Plaintiff, instead of accepting that award, chose the remedy of constructive trust which gave her the property itself.  This choice, Defendant argues, made the fraud award an "extra" award that was not tied to any loss due to monies Plaintiff advanced for the property's purchase.  He further argues that had Plaintiff accepted the breach of contract damages and foreclosure as remedies, under Oregon law she would not have been permitted a deficiency judgment after foreclosure.  He argues the "extra" fraud money award was a de facto deficiency judgment that is void as against Oregon's public policy.

Defendant's arguments are unpersuasive.  According to the jury instructions and verdict, the fraud money award consists of damages directly resulting from Plaintiff's reliance on Defendant's fraudulent representation (or omission).  That is what the § 523(a)(2)(A) test requires, and distinguishes these facts from Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219 (9th Cir. 2010) upon which Defendant relies.

In Ghomeshi, the debtor was an unlicensed general contractor.  Pre-bankruptcy, a creditor obtained two money awards in a state court judgment.  Each of the awards was under a different California statute. One statute allowed for attorney fees, a statutory penalty, and actual damages if the party was fraudulently induced to contract for home improvements. The state court awarded a $500 penalty and attorney fees, but no actual damages.  The second statute allowed recovery of any compensation paid to an unlicensed

MEMORANDUM OPINION-7

contractor, but required no fraudulent intent. The state court awarded $123,000, which was the amount the creditor paid to the debtor. In a subsequent § 523(a)(2) action, the creditor argued the $123,000 award should be wrapped into the other award which was based on fraud. The court disagreed, holding the state court had declined to award any actual damages based on fraud. Id. at 1224. In contrast, here there is an actual damages award based on fraud, that being $246,593.63.

In actuality, Defendant's arguments go either to the merits of the fraud money award and/or whether it is duplicative of or subsumed by the constructive trust judgment. However, this Court cannot look behind the award. That is the whole point of preclusion. Summary judgment will therefore be entered declaring the fraud money award excepted from discharge.

Breach of Fiduciary Duty Money Award:

Plaintiff relies on the preclusive effect of the state court proceedings and Judgment in arguing summary judgment is appropriate to except the $371,775.09 breach of fiduciary duty money award[5] from discharge under § 523(a)(4). For purposes of the motion, she relies on the portion of the statute which excepts from discharge "any debt–for defalcation . . . while acting in a fiduciary capacity."[6] She argues the state court judgment preclusively establishes Defendant's status as a "fiduciary." Specifically, she argues

// // //

// // //

---

[5]"Under Oregon law, the elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship, (2) breach of a fiduciary duty, and 3) identifiable loss or injury as a result of the breach." Noel v. Hall, 2012 WL 3241858, *16 (D. Or. Apr. 27, 2012), report and recommendation adopted, 2012 WL 3241814 (D. Or. Aug. 7, 2012), aff'd, 525 F. App'x 633 (9th Cir. 2013) (internal quotation omitted). "There is no intent or bad faith element needed to establish the claim . . . ." Id. at *18.

[6]While Plaintiff's complaint includes only "fraud [as opposed to defalcation] while acting in a fiduciary capacity," Complaint at ¶¶ 25-28, Defendant has not objected to the present defalcation arguments and in fact has responded to them. Thus, there appears no surprise or prejudice, and to the extent necessary, the Court deems the Complaint amended to plead a defalcation claim. See FRCP 15(a)(2) (made applicable by FRBP 7015) (court should freely give leave to amend when justice so requires). Because any such amendment arises out of the same conduct as originally pled, it relates back to the original Complaint's filing for purposes of FRBP 4007(c)'s deadline. FRCP 15(c)(1)(B).

MEMORANDUM OPINION-8

1  Defendant's role as a partner in the Side X Side partnership establishes his fiduciary status as a matter of

2  law.[7]

3       Under § 523(a)(4), "[t]he broad, general definition of fiduciary–a relationship involving confidence,

4  trust and good faith–is inapplicable." Pemstein v. Pemstein (In re Pemstein), 492 B.R. 274, 281 (9th Cir.

5  BAP 2013). Instead "fiduciary" is narrowly defined. The relationship must arise "in relation to an express

6  or technical trust that predates the alleged defalcation." Id. The very act of wrongdoing cannot create the

7  trust, thereby eliminating constructive, implied, and resulting trusts from § 523(a)(4)'s reach. Id. "Whether

8  the debtor was acting in a fiduciary capacity within the meaning of § 523(a)(4) is a question of federal law.

9  State law, however, determines whether the requisite trust relationship exists." Id. (internal citations

10  omitted). "The mere fact [however] that state law puts two parties in a fiduciary-like relationship does not

11  necessarily mean it is a fiduciary relationship within . . . § 523(a)(4)." Honkanen v. Hopper (In re

12  Honkanen), 446 B.R. 373, 379 (9th Cir. BAP 2011). "[T]he applicable state law must clearly define

13  fiduciary duties and identify trust property." Id. The requisite trust may be created by statute if it "[b]ear[s]

14  the hallmarks of an express trust." Id.[8] While Defendant concedes the breach of fiduciary relationship claim

15  // // //

16

17       [7]Plaintiff has also alleged fiduciary status "arising from Defendant's position of confidence with

18  Plaintiff," Complaint at ¶ 26, but has not argued for such a finding in the present motion.

19       [8]As for "defalcation," while varying definitions have emerged, at least one court has simply stated,

20  "[a] fiduciary commits defalcation by using trust property in a manner inconsistent with the duties and
   obligations imposed by the trust." Maxwell v. Maxwell (In re Maxwell), 509 B.R. 286, 289 (Bankr. E.D.

21  Cal. 2014). Defalcation for purposes of § 523(a)(4) requires a culpable state of mind akin to those
   accompanying application of the other terms in the statute (i.e., "fraud," "embezzlement," and "larceny").

22  Bullock v. BankChampaign, N.A., 569 U.S.__, 133 S. Ct. 1754, 1757 (2013). Thus, the fiduciary must
   engage in: 1) "bad faith, moral turpitude or other immoral conduct," 2) intentional improper conduct or

23  criminally reckless conduct, or 3) conduct in which he, although without actual knowledge of his
   wrongdoing, was wilfully blind to or consciously disregarded a substantial and unjustifiable risk that a

24  breach of his duties would result. Heers v. Parsons (In re Heers), 529 B.R. 734, 742-743 (9th Cir. BAP

25  2015) (interpreting Bullock). Because, as discussed below, the instant motion is being resolved on fiduciary
   status grounds, the Court need not at this juncture determine whether there is a genuine issue of fact as to

26  whether Defendant committed a defalcation.

MEMORANDUM OPINION-9

was one involving Defendant's role in the Side X Side partnership, he disputes that role rose to the level of technical or statutory trustee.

The roles and duties of partners under Oregon law are presently set forth by statute. However, a brief history is in order. Until 1998, Oregon's version of the Uniform Partnership Act of 1914 (**UPA**) was in effect. That statutory scheme included former ORS 68.340(1) (repealed 1997) (which was modeled after UPA § 21(1)) and which provided:

> Every partner must account to the partnership for any benefit, and <u>hold as trustee</u> for it any profits derived by the partner <u>without the consent of</u> the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.
> (Emphasis added).

Every state except Louisiana adopted the UPA, and, in several Ninth Circuit Court of Appeals cases, victimized partners argued the "hold as trustee" language in UPA § 21(1) created an express statutory trust so as to come within § 523(a)(4)'s ambit. Those arguments, however, were rebuffed, the court holding the "without the consent of" language qualified the "hold as trustee" phrase, so that the trust relationship was created upon the partner's wrongful conduct, not before as required. <u>See</u> <u>Ragsdale v. Haller</u>, 780 F.2d 794, 796 (9th Cir. 1986) (Cal. law); <u>Lewis v. Scott (In re Lewis)</u>, 97 F.3d 1182, 1185-1186 (9th Cir. 1996) (Ariz. law). Nevertheless, both the <u>Ragsdale</u> and <u>Lewis</u> courts turned respectively to California and Arizona common law which both imposed duties beyond the statute, including that a partner held partnership property in trust. <u>Ragsdale</u>, 780 F.2d at 796-797; <u>Lewis</u>, 97 F.3d at 1186.

Before those decisions, the Oregon Supreme Court, in <u>Fouchek v. Janicek</u>, 190 Or. 251, 225 P.2d 783 (1950), examined a partner's status vis-a-vis other partners and the partnership. There, the partner appropriated a valuable business opportunity from the partnership. The Court noted the partner's appropriation made him accountable as a constructive trustee, <u>Id.</u> at 261, 274, 225 P.2d at 788, 794, holding the "essence of the fiduciary character of a partner" was captured by § 79-404, O.C.L.A. (later codified as ORS 68.340(1)). <u>Id.</u> at 262, 225 P.2d at 789. It also quoted with approval several authorities which described a partner's role, in essence, as that of a trustee. <u>Id.</u> at 257, 262, 225 P.2d at 787, 788-789.

/// /// ///

MEMORANDUM OPINION-10

Fouchek in turn was cited with approval in Starr v. Int'l Realty, Ltd., 271 Or. 396, 402-403, 533 P.2d 165, 168 (1975). There, a partner was held liable in a state court suit for failing to disclose a real estate commission he took upon the partnership's purchase of property. The non-disclosing partner then filed bankruptcy, whereupon the victimized partners filed a dischargeability action. The Bankruptcy Court held for the debtor. On appeal, in Inahara v. Harris (In re Harris), 458 F.Supp. 238 (D. Or. 1976), aff'd sub nom. Matter of Harris, 587 F.2d 451 (9th Cir. 1978), the District Court reversed, holding the liability was excepted from discharge under § 523(a)(4)'s predecessor, § 17(a)(4) of the Bankruptcy Act, which also excepted from discharge debts for "fraud . . . or defalcation while acting . . . in any fiduciary capacity." Id. at 243. The Harris court noted "[t]his is not a case of a constructive trust." Id. Ten years after the District Court opinion in Harris, Ragsdale cited it with approval for the proposition that an Oregon partner has fiduciary duties over the partnership's assets as a trustee so as to come within § 523(a)(4). 780 F.2d at 797. Harris was also followed in Maginnis v. Pederson (In re Pederson), Civ. No. 90-417-MA at 6-7 (D. Or. Feb. 8, 1991) (Marsh, J.) (unpublished), the court there stating the general proposition that Oregon partners are accountable as fiduciaries, and recognizing that a partner's defalcations had been held by the relevant caselaw to be nondischargeable under § 523(a)(4). Id.

After those decisions were rendered, Oregon repealed the UPA in favor of its version of the Revised Uniform Partnership Act of 1994 (**RUPA**). As part of the repeal and revision, ORS 67.155 replaced ORS 68.340. It provides in relevant part:

> 1) The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections (2) and (3) of this section.
>
> (2) A partner's duty of loyalty to the partnership and the other partners includes the following:
>
>> (a) To account to the partnership and hold for it any property, profit or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;
>>
>> (b) Except as provided in subsections (5) and (6) of this section, to refrain from dealing with the partnership in a manner adverse

MEMORANDUM OPINION-11

1    to the partnership and to refrain from representing a person with
     an interest adverse to the partnership, in the conduct or winding
2    up of the partnership business; and

3    (c) To refrain from competing with the partnership in the
     conduct of the partnership business before the dissolution of the
4    partnership.

5    . . . .

6    (5) A partner does not violate a duty or obligation under this chapter or under
     the partnership agreement merely because the partner's conduct furthers the
7    partner's own interest.

8    Thus, a partner's "only" fiduciary duties are now set by statute.  It is this Court's task to determine

9    the legislature's intent as to the scope of those duties.[9]  ORS 174.020(1)(a);  State v. Gaines, 346 Or. 160,

10   164, 206 P.3d 1042, 1046 (2009).  The first place to look in doing so is the statute's text and context. Id. at

11   171,  206 P.3d at 1050.  "Statutory context includes other provisions of the same statute and other related

12   statutes, as well as the preexisting common law and the statutory framework within which the statute was

13   enacted." Fresk v. Kraemer, 337 Or. 513, 520–521, 99 P.3d 282, 286 (2004).  The Court may also look to

14   legislative history (either as proffered by the parties or found by the court), and give such history whatever

15   weight it deems appropriate.  Gaines, 346 Or. at 171–172, 206 P.3d at 1050–1051.

16   Examining ORS 67.155(2)(a)'s text, the "without the consent of" language in former ORS 68.340(1)

17   has been eliminated.  This could be read to signify a partner's duty to "account to" and "hold for" arises

18   before, and not as a result of any wrongdoing.  See Brophy v. Garrett (In re Garrett), 2006 WL 5003864, *2

19   (Bankr. D. Md. March 17, 2006) (Maryland's version of RUPA § 404);  Gen. Ret. Sys. of  Detroit v. Dixon

20   (In re Dixon), 525 B.R. 827, 845-846 (Bankr. N.D. Ga. 2015) (Delaware's version of RUPA § 404).  This

21   // // //

22

23   _____

24   [9]The Court could find no cases after ORS 67.155's passage addressing whether Oregon partners are
     trustees.  What little authority exists appears to reaffirm a partner's statutory duties of care and loyalty under
25   ORS 67.155(1)-(3), which under ORS ORS 67.155(4) must be discharged consistent with the obligation of
     good faith and fair dealing.  See, e.g., Linderman v. Nichols, 2015 WL 164872, *2 (D. Or. 2015).  That same
26   authority goes on to hold that a breach of a partner's statutory duties may give rise to a claim for constructive
     fraud. Id. at *2-3;  Noel, 2012 WL 3241858 at *17.

MEMORANDUM OPINION-12

would strengthen the argument that, under Oregon law, a partner's relationship to his other partners and to the partnership is one of express statutory trust. However, there is reason to take pause.

ORS 67.155(2)(a) is based on RUPA § 404(b)(1), which is identical to the Oregon statute except in one crucial particular. RUPA § 404(b)(1) provides that a partner holds "<u>as trustee</u>" for [the partnership] "any property, profit, or benefit . . .", etc. As evident, Oregon did not enact the "as trustee" language. Given the prior caselaw cited above, that omission could be read as merely a stylistic, non-substantive change. Alternatively, it could as easily be read as evidencing the legislature's intention that Oregon partners, as such, are not trustees. Resort to the statute's legislative history is thus warranted.

The 1997 revisions to Oregon's partnership law (effective Jan. 1, 1998) were contained in Senate Bill 268 (**the Bill**). The Bill was drafted by a Task Force of the Oregon State Bar Business Law Section. The Task Force produced a report. Task Force Report: Oregon Revised Partnership Act, House Committee on Judiciary, Subcommittee on Civil Law, SB 268, March 10, 1997, Public Hearing, Ex. C (**the Report**). The Report was prepared "to explain the differences between the Bill and RUPA and to describe the variations between the Bill and the [then existing, now former,] Oregon Uniform Partnership Law ("OUPL"), ORS Chapter 68." <u>Id.</u> at 1. On the issue at hand it stated:

> The Bill adopts RUPA Section 404 <u>with several modifications</u> . . . .
>
> There is no counterpart to Section 20 [of the Bill] in OUPL. With respect to a partner's fiduciary duty, ORS 68.340(1) merely provides that "[e]very partner must account to the partnership for any benefit and hold as trustee for it any profits derived by the partner without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by the partner of its property." <u>The Bill clarifies OUPL by establishing that a partner has dual fiduciary duties to the partnership and the other partners--a duty of loyalty and a duty of care. The Bill also specifies that the duty of loyalty and the duty of care are fiduciary duties, which is consistent with the concept of the partnership as an entity. Because OUPL does not specifically state that the duty of loyalty is a fiduciary duty (except in the caption to ORS 68.340), OUPL is subject to the possible construction that a partner owes the same duty of loyalty as a trustee of a trust.</u>

<u>Id.</u> at 9 (emphasis added). In support of the Bill, the Task Force's Chairman, James M. Kennedy, and one of its members, David C. Culpepper, gave the following statements:

// // //

MEMORANDUM OPINION-13

**Kennedy**:  The partnership statute [OUPL-ORS 68.340(1)] is very unclear with respect to fiduciary duties.  There's one sentence in the statute that says every partner must account to the partnership for any benefit and hold as a trustee for it any profits derived by him . . . without the consent of the other partners.  It's very unclear under the existing formulation what that really means.  <u>Is the partner a trustee or does the partner **merely** have fiduciary duties?  The cases seem to indicate that a partner has fiduciary duties but the statute [i]s unclear in this respect.</u>

**Culpepper**: Let me interrupt for a sec, and that <u>distinction</u> [sic] [pause], a trustee has very severe fiduciary duties.  I mean a trustee will be surcharged if anything goes wrong <u>and that's really a higher level of fiduciary duty than just the term fiduciary duty implies</u>.

Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law, SB 268, March 10, 1997, Public Hearing, Tape 35, Side B (emphasis added).

  The above excerpts make clear the drafters drew a distinction between a partner as a generic fiduciary (with duties of loyalty and care) and a trustee (which involves heightened duties).  They also make clear the statute was intended to limit a partner's status to the former.  Even assuming arguendo that prior caselaw recognized "trustee" status between Oregon partners, such caselaw was impliedly abrogated by ORS

// // //
// // //
// // //
// // //
// // //
// // //
// // //
// // //
// // //
// // //
// // //
// // //

MEMORANDUM OPINION-14

67.155(2)(a)'s passage. Because Oregon partners, as such, do not act as trustees,[10] they are not fiduciaries within the scope of § 523(a)(4).

**Conclusion:**

Plaintiff's summary judgment motion as to Count I of the Complaint regarding the fraud money award ($246,593.63), and the portion of Count II regarding the conversion money award ($4,606.61), will be granted. There being no just reason for delay, FRCP 54(b) (made applicable by FRBP 7054(a)), judgment will be entered declaring both those awards excepted from Defendant's discharge. The motion as to the breach of fiduciary duty money award will be denied. The Court will prepare the appropriate order and judgment.

This opinion constitutes the Court's findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.



THOMAS M. RENN
Bankruptcy Judge

---

[10]This conclusion is buttressed by Official Comment #5 to RUPA § 404(e). That subsection, codified as ORS 67.155(5), provides in pertinent part, "[a] partner does not violate a duty or obligation . . . merely because the partner's conduct furthers the partner's own interest." Official Comment #5 thereto provides:

> Subsection (e) is new and deals expressly with a very basic issue on which the UPA is silent. <u>A partner as such is not a trustee and is not held to the same standards as a trustee.</u> Subsection (e) makes clear that a partner's conduct is not deemed to be improper merely because it serves the partner's own individual interest. (Emphasis added).

<u>See</u> <u>U.S. Nat'l Bank v. Boge</u>, 311 Or. 550, 563-564, 814 P.2d 1082, 1090 (1991) (an Official Comment to a uniform law adopted by the Oregon legislature is instructive in gleaning the legislature's intent); <u>see also</u> <u>Timmermann v. Timmermann</u>, 272 Or. 613, 626, 538 P.2d 1254, 1260-1261 (1975) (quoting Official Comment to UPA § 29 as an aid in interpreting former ORS 68.510); <u>Report</u> at 1 (incorporating RUPA's Official Commentary as an interpretive aid).
While at first blush it would appear Comment #5's disclaimer of partner trustee status conflicts with RUPA § 404(b)(1)'s "as trustee" language describing a partner's duty of loyalty, because Oregon deleted such language, Comment #5 and ORS 67.155(2)(a) can be harmonized.

MEMORANDUM OPINION-15